SUMMARY ORDER
This is an insurance coverage dispute between Steadfast Insurance Company (“Steadfast”) and Stroock & Stroock & Lavan, LLP (“Stroock”), a law firm. Steadfast and Stroock entered into a “Lawyers Professional Liability Insurance” policy (“the Policy”) covering the period between September 1, 1997 and September 1, 2000. Pursuant to the Policy, Steadfast agreed to pay for “Defense Expenses” and “Loss” incurred by an “Insured” for any ‘Wrongful Act” stated in a “Claim.” Under the terms of the Policy, an “Insured” means Stroock or any one of its individual partners, associates, and employees. A “Claim” includes all civil actions and proceedings brought against an Insured for losses incurred as a result of a Wrongful Act. This latter term is defined as follows:
“Wrongful Act” means any actual or alleged act, error, omission, or breach of duty committed by an Insured or by any person for whose actions [Stroock] is legally responsible, ... but only in connection with the performance of, or failure to perform Professional Services.
The Policy does not cover all assertions of liability against Stroock and its attorneys. Rather, it contains the following exclusions of coverage (“the knowingly wrongful act exclusion” and “the unlawful profit, gain or advantage exclusion”):
[Steadfast] will not pay any Loss or any Defense Expenses resulting for Claims against Insureds:
*665 (A) based on, arising out of or resulting from in fact:
(1) any malicious, knowingly wrongful, or criminal act, error, omission, or breach of duty, ... committed or personally acquiesced in by any Insured, or by any person for whose actions [Stroock] is legally responsible; or
^ ^ ^ ^ ^
(3) the gaining by any Insured or by any person for whom, [Stroock] is legally responsible, of any profit, gain or advantage to which such Insured or person was not legally entitled; .... (emphases added)
The Policy also contains the following severability clause:
(1) Severability:
(1) With respect to EXCLUSION (A), no fact pertaining to or knowledge possessed by any Insured shall be imputed to any other Insured to determine if coverage applies, (emphasis added)
The instant dispute arises out of an adversary proceeding filed in December 1998 in bankruptcy proceedings of a California corporation called Helionetics, Inc. (“Helionetics”) pending in the U.S. Bankruptcy Court for the Central District of California. The adversary proceeding was filed by “The Official Committee of Unsecured Creditors of Helionetics, Inc.” against several of the directors and officers of Helionetics, as well a number of accounting firms, brokerage houses, and law firms, including Stroock, which had provided professional services to Helionetics or its subsidiary “KSWI.”
The adversary proceeding arose from a transaction involving Helionetics and KSWI, which Helionetics had acquired in 1994. Shortly after this acquisition, Helionetics itself began to suffer severe losses. The second amended complaint filed in the adversary proceeding alleges that as Helionetics declined, its principal shareholders “agreed on a plan and scheme to remove KSWI, [Helionetics’] only profitable asset, from under the umbrella of [Helionetics] by way of a distribution of the KSWI common stock” to themselves. It is further alleged that Stroock participated in this scheme by serving as KSWI’s counsel and preparing a number of documents related to the transaction.
Stroock settled the claims brought against it in the adversary proceeding. In the instant action, Steadfast seeks to obtain a declaratory judgment that it is not required to indemnify Stroock for the amounts paid pursuant to this settlement. The district court granted Steadfast’s motion for judgment on the pleadings, holding that “all of the claims [brought against Stroock] in the [adversary proceeding] fall squarely within two policy exclusions — the knowingly wrongful exclusion and the unlawful profit[,] gain or advantage exclusion.”
Our review of the district court’s judgment on the pleadings is de novo. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir.2004) (per curiam). Stroock makes three distinct arguments as to why the district court erred, which we reject for the reasons stated below.
1. The Firm and Its Attorneys as Separate Insureds. Stroock contends that in connection with the KSWI transaction, “ ‘Stroock’ as a firm did not draft anything; Helionetics retained the Stroock firm, and its attorneys drafted the documents,” which ... are alleged to have been used to facilitate the fraudulent transfer of KSWI stock. Further, Stroock declares that there was an “absence of any factual findings [by the district court] that the Firm itself had committed a ‘knowingly wrongful act’ or acquired an ‘unlawful gain.’ ” This is significant, Stroock argues, because the Policy explicitly recognizes *666 that Stroock and each of its individual attorneys are separate “Insureds,” and the Policy’s severability clause explicitly precludes the imputation of one Insured’s knowledge of wrongful acts to another Insured. This, Stroock concludes, “leads ineluctably to the conclusion that the knowledge of a member of the Firm cannot be imputed to the Firm in analyzing the availability of coverage” under the Policy.
The district court correctly dispatched this sophistical argument in a footnote, which recognizes that the Policy’s sever-ability clause applies to the scope of coverage under the Policy when claims are asserted against more than one Insured. The clause prevents the imputation of knowledge of the conduct of the wrongful acts committed by one Insured to another Insured “ ‘to determine if coverage applies’ .... It does not prevent imputation of knowledge or [of] conduct to establish liability for the underlying claims.” (emphasis in original)
The only Insured named as a defendant in the adversary proceeding is Stroock. As Stroock itself acknowledges, a law firm only acts through its attorneys and “can only be hable for torts vicariously, through, for example, the doctrine of respondeat superior.” The Policy itself explicitly states that Stroock can be liable for fraudulent acts performed “by any person for whose actions the Firm is legally responsible.” Thus, knowledge of the wrongful acts allegedly committed by its attorneys in connection with the distribution of KSWI stock can properly be imputed to Stroock for the purposes of determining liability under the Policy. The Policy’s severability clause, which relates only to the imputation of knowledge “to determine if coverage applies,” is irrelevant to the question of whether Steadfast must indemnify Stroock with respect to acts for which Stroock concedes it may be held liable.
2. The “In Fact” Requirement. The policy provides that Steadfast will not pay losses or expenses “based on, arising out of or resulting from in fact” claims alleging that an insured committed a knowingly unlawful act or received a benefit to which it was not legally entitled, (emphasis added) Stroock contends that the use of the term “in fact” means that an exclusion from coverage “may not be based simply on the mere allegations in the underlying complaint” and that, therefore, the district court erred “[b]y failing to require Steadfast to prove that Stroock ‘in fact’ received an illegal profit or advantage, or that Stroock ‘in fact’ acted in a ‘knowingly wrongful’ manner.”
Reading such a requirement into the Policy is clearly wrong because the only way Steadfast could “prove” in the district court that excluded conduct occurred is to actually hold a trial on the claims asserted against Stroock in the adversary proceeding. That is an absurd result. Rather, as Steadfast argues, the “‘[i]n fact’ exclusion language applies to limit the application of the exclusion only when a court’s finding of liability could be based [either] on conduct covered by the policy, or upon ... conduct that is excluded.” But the claims asserted against Stroock in the adversary proceeding sounded only in fraud, which is excluded conduct under the Policy. The claims did not sound in negligence, which is conduct covered by the Policy. That is, proof of knowing wrongdoing by Stroock was an essential element of liability against it, and, as the district court found, “Steadfast disclaimed coverage for all causes of action for which actual knowledge of wrongdoing is an essential element.”
3. Aiding and Abetting Under California Law. Finally, Stroock argues that not all of the claims asserted against it in the adversary proceeding sounded in *667 fraud. One of these claims asserts aiding and abetting under the common law of California, and Stroock contends that, properly considered, the law of California is that liability for aiding and abetting may be based upon merely negligent conduct. Stroock acknowledges, however, that this argument was not raised before the district court. “It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.” Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). We therefore decline to consider Stroock’s argument regarding California’s aiding and abetting law.
Accordingly, for the reasons set forth above, the judgment of the District Court is hereby AFFIRMED.